1          THE HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8

9    VALARIE D. JOHNSON,                    Case No. C09-1867-JCC

10               Plaintiff,                 ORDER

11        v.

12   EQUAL EMPLOYMENT OPPORTUNITY
     COMMISSION,
13
                 Defendant.
14

15        This matter comes before the Court on Defendant's motion for summary judgment

16   (Dkt. No. 22), Plaintiff's response (Dkt. No. 28), and Defendant's reply (Dkt. No. 29).[1] This

17   matter also comes before the Court on Defendant's motion to extend the deadline to complete

18   mediation (Dkt. No. 34), Plaintiff's response (Dkt. No. 35), and Defendant's reply (Dkt. No.

19   37). Having thoroughly considered the parties' briefing and the relevant record, the Court

20   denies in part and grants in part the motion for summary judgment for the reasons explained

21   herein. The Court grants the motion to extend the deadline to complete mediation.

22   _____

23        [1] Plaintiff also filed an additional "Reply Memorandum in Opposition of Defendant's
24   Motion for Summary Judgment." (Dkt. No. 31). Although Plaintiff proceeds pro se and is
     entitled to some leeway in interpreting her documents, she must nonetheless comply with basic
25   procedural rules. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108
     (9th Cir. 2000). Plaintiff was not entitled to file an additional "reply" in the manner she did, *see*
26   Local Rules W.D. Wash. CR 7, and the Court does not consider it.

ORDER, C09-1867-JCC
PAGE - 1

1    I.      BACKGROUND

2           This action arises out of a settlement agreement between the parties. Plaintiff, an

3    employee of Defendant Equal Employment Opportunity Commission in its Seattle Field Office

4    who proceeds pro se, complained that Defendant had discriminated against her on the basis of

5    race and in reprisal for her opposition to alleged discriminatory practices when Defendant did

6    not hire Plaintiff as an "Alternative Dispute Resolution Mediator." (Def.'s Mot. Summ. J. 2

7    (Dkt. No. 22); Pl.'s Resp. (Dkt. No. 28 at 3–4).) The parties entered a settlement agreement.

8    (Johnson Decl. Ex. C (Dkt. No. 28-2).) Relevant to this action, Defendant agreed to give

9    "priority consideration" for the next available mediator position:

10          The Agency agrees to give Complainant priority consideration for the next
            available mediator position. Both parties understand that priority consideration
11          means that the selecting official for the future position will review
            Complainant's application without any comparison to any other applicants'
12          applications and determine if Complainant should be selected for the position.
            Complainant understands that priority consideration is not a guarantee of
13          selection.

14   (*Id.* at 17.) Plaintiff, the director of the Seattle Field Office, and Jean Watson, "Director, Office

15   of Equal Opportunity," signed the settlement agreement. (*Id.* at 19.)

16          Approximately one year later, a supervisory investigator in Defendant's Dallas office

17   received a transfer to the Seattle office. (Stahman Decl. Ex. D. (Dkt. No. 23-1 at 12).) The

18   investigator requested a hardship transfer to care for her ailing mother. (*Id.*) Because the

19   Seattle office did not have enough work to support another investigator, the transferee offered

20   to take a mediator position. (*Id.*) Defendant asserts that the Seattle Field Office did not request

21   or initiate the investigator's transfer. (Lucero Decl. 1–2 (Dkt. No. 24).) Instead, Defendant

22   contends that "[c]onsistent with agency policy and practice, [the investigator's] request for a

23   hardship transfer was likely sent to the EEOC's Field Management Programs where a liaison

24   from that office would have spoken with both the Dallas Director and the San Francisco

25   District Director to determine if either party had an objection to the hardship transfer and

26

ORDER, C09-1867-JCC
PAGE - 2

1    determine whether the workload needs of the EEOC would have been well served by agreeing

2    to the transfer." (Def.'s Mot. Summ. J. 3 (Dkt. No. 22).)

3          The Seattle Field Office has not posted any mediator positions or recruited candidates

4    for mediator positions since the parties signed the settlement agreement. (Lucero Decl. 3 (Dkt.

5    No. 24).) According to Director of the Office of Field Programs Nicholas Inzeo, the Seattle

6    Field Office did not have permission to solicit, externally or internally, applications for a

7    mediator position due to budget restrictions. (Inzeo Aff. ¶¶ 23–32 (Dkt. No. 25).) The San

8    Francisco office, however, received authorization to fill three mediator positions, two in 2007

9    and one in 2010. (Johnson Decl. ¶ 7(Dkt. No. 28-1 at 2).) Although Plaintiff claims that she

10   notified the San Francisco coordinator of her interest in mediating, Plaintiff does not say that

11   she applied for any of the San Francisco positions. (*Id.*).

12   II.    DISCUSSION

13         The parties dispute whether Defendant breached the settlement agreement by

14   transferring the Dallas investigator and not considering Plaintiff for the San Francisco

15   positions. Because Plaintiff's settlement agreement arises out of her Title VII complaint,

16   federal—as opposed to state—contract law applies.[2] *See Stroman v. W. Coast Grocery Co.*,

17

18   _____

19        [2] Some jurisdictions have either declined to determine whether state or federal law
     applies to interpreting Title VII settlement agreements, *see, e.g.*, *Bowden v. United States*, 106

20   F.3d 433, 439–40 (D.C. Cir. 1997), or concluded that state law applies, *see, e.g., Hayes v. Nat'l
     Serv. Indus.*, 196 F.3d 1252, 1253 (11th Cir. 1999). Washington law, if it applied, would not

21   change the Court's conclusion. *See Simpson Timber Co. v. Palmberg Constr. Co.*, 377 F.2d
     380, 384 (9th Cir. 1967) ("In the State of Washington parol evidence is admissible only if a

22   contract is ambiguous as a matter of law. It should not be introduced for the purpose of
     creating an ambiguity; rather it should be admitted only when the court has itself determined

23   that parol is necessary in order to explain or remove an ambiguity apparent on the face of the
     instrument."); *Mayer v. Pierce County Med. Bureau, Inc.*, 909 P.2d 1323, 1326 (Wash. Ct.

24   App. 1995) ("In construing a written contract, the basic principles require that (1) the intent of
     the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and

25   (3) a court will not read an ambiguity into a contract that is otherwise clear and

26   unambiguous.")

     ORDER, C09-1867-JCC
     PAGE - 3

1   884 F.2d 458, 461 (9th Cir. 1989) ("The interpretation and validity of a release of claims under

2   Title VII is governed by federal law." (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d

3   1207, 1209 (5th Cir. 1981) ("Creation of a federal rule rather than absorption of a state rule is

4   appropriate where the rights of the litigants and the operative legal policies derive from a

5   federal source.")))); *see also, e.g.*, *Chavez v. New Mexico*, 397 F.3d 826, 830 (10th Cir. 2005)

6   ("Generally, the enforcement and interpretation of settlement agreements in Title VII cases are

7   governed by federal common law because such settlements are inextricably linked to the

8   underlying law of Title VII." (quotation marks omitted)).

9          The Court must give contract terms

10          their ordinary meaning, and when the terms of a contract are clear, the intent of
            the parties must be ascertained from the contract itself. Whenever possible, the
11          plain language of the contract should be considered first. . . . [T]he common or
            normal meaning of language will be given to the words of a contract unless
12          circumstances show that in a particular case a special meaning should be
            attached to it. [The Court must] read a written contract as a whole, and interpret
13          each part with reference to the whole. That the parties dispute a contract's
            meaning does not render the contract ambiguous; a contract is ambiguous if
14          reasonable people could find its terms susceptible to more than one
            interpretation.
15

16   *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (citations and quotation marks

17   omitted).

18          Defendant emphasizes that the Seattle Field Office had no control over the

19   investigator's transfer into the Seattle mediator position, did not consider a hardship transfer a

20   part of the "hiring or selection process," and had not posted or recruited candidates for any

21   mediator positions since the parties signed the settlement agreement. (Def.'s Mot. Summ. J. 7

22   (Dkt. No. 22).) In particular, Defendant argues that the settlement agreement requires priority

23   consideration for mediator positions filled through a "competitive process," which, according

24   to Defendant, does not include hardship transfers. (*Id.*) Although some language in the

25   settlement agreement supports Defendant's interpretation, reasonable people could find the

26   agreement's terms susceptible to more than one interpretation. Specifically, the settlement

ORDER, C09-1867-JCC
PAGE - 4

1   agreement defines "priority consideration," but it does not define "next available mediator

2   position." The term "next available mediator position" is ambiguous because reasonable people

3   could interpret it to include a position filled through a hardship transfer. The settlement

4   agreement makes no explicit exception for mediator positions filled through a hardship

5   transfer. Permitting a hardship transfer suggests that the Seattle Field Office maintained a

6   sufficient workload to support the position, and the transferee "applied" for the transfer.

7   Defendant chose or "selected" the transferee to mediate. The parties may have intended to

8   define "next available mediator position" as one filled through a typical competitive process

9   through a job posting and to exclude positions filled through hardship transfers, but the Court

10  cannot conclude from the four corners of the settlement agreement, without resort to extrinsic

11  evidence, that the parties so intended that limitation. *See U.S. For Use & Benefit of Union*

12  *Bldg. Materials Corp. v. Haas & Haynie Corp.*, 577 F.2d 568, 572 (9th Cir. 1978) ("Appellant

13  challenges the district court's determination that the contract was ambiguous in regard to the

14  method of payment for materials delivered but not yet installed. Such a finding presents a

15  question of law, freely reviewable by this court. Reviewing the written documents which

16  comprise the contract, we are unable to determine whether any payment for profit and

17  overhead was intended to be included in the payment made for materials delivered but not yet

18  installed." (citation omitted)); *see also NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682 (D.C.

19  Cir. 1985) ("[I]n most respects relevant to this controversy the 'Federal law of Government

20  contracts' dovetails precisely with general principles of contract law. . . . When . . . the

21  language is unclear and the search for intent extends beyond the four corners of the agreement,

22  the intended meaning of the contract is a disputed and, necessarily, material question of fact

23  and summary judgment is improper."); 10B Charles Alan Wright et al., *Federal Practice &*

24  *Procedure* § 2730.1 (3d ed. 2010).

25      Moreover, the settlement agreement is silent with respect to which office or individual

26  is the "selecting official for the future position" who would review Plaintiff's "application"

ORDER, C09-1867-JCC
PAGE - 5

1 without comparison to "other applicants' applications." The term "selecting official" is

2 ambiguous. Defendant interprets "selecting official" to mean the Seattle Field Office director.

3 (Def.'s Mot. Summ. J. 7 (Dkt. No. 22).) ("Mr. Lucero did not have permission to solicit either

4 internal or external applications for a mediator position due to budgetary restrictions. . . . The

5 SFO did not have authority to hire or fill a new mediator through any competitive process.").

6 But the settlement agreement does not, on its terms, define "selecting official" or limit it to the

7 Seattle Field Office or its director. Notably, the letterhead of the agreement lists the EEOC in

8 Washington D.C., not Seattle. (Johnson Decl. Ex. C (Dkt. No. 28-2 at 17).) The case caption

9 asserts a complaint against the national chair of the EEOC. (*Id.*) The agreement binds "the

10 EEOC (the Agency))," not the Seattle office. (*Id.*) And the settlement agreement includes the

11 signature of who appears to be a national director of the Office of Equal Opportunity. (*Id.* at

12 19.) Reasonable people could interpret "selecting official" to include any management

13 personnel with the authority to fill any mediator position, including officials in the San

14 Francisco District Office who apparently approved the hardship transfer. The parties may have

15 intended to limit "selecting official" to the Seattle Field Office director, but the Court cannot

16 conclude from the four corners of the settlement agreement, without resort to extrinsic

17 evidence, that the parties so intended that limitation. Accordingly, the Court denies

18 Defendant's motion for summary judgment with respect to Plaintiff's claim that Defendant

19 breached the settlement agreement by filling a mediator position through a hardship transfer

20 without giving Plaintiff priority consideration. *See Az. Laborers, Teamsters & Cement Masons*

21 *Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1518 (9th

22 Cir. 1985) ("As we have emphasized, when an agreement's meaning is not clear on its face and

23 contrary inferences as to intent are possible, there exists an issue of material fact for which

24 summary judgment is ordinarily inappropriate.")

25      Nonetheless, the Court grants Defendant's motion for summary judgment with respect

26 to Plaintiff's remaining claims. As to Plaintiff's allegation that Defendant breached the

ORDER, C09-1867-JCC
PAGE - 6

1    settlement agreement by refusing to pay for her training courses, Plaintiff did not raise that

2    claim in her complaint. Because Plaintiff proceeds pro se, the Court interprets liberally her

3    complaint. *See Bernhardt*, 339 F.3d 920, 925 (9th Cir. 2003). But Plaintiff states no facts in her

4    complaint showing that she is entitled to relief on this claim. *See* Fed. R. Civ. P. 8(a)(2); *Bell*

5    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) ("Without some factual allegation in the

6    complaint, it is hard to see how a claimant could satisfy the requirement of providing not only

7    'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

8    Moreover, although a pro se litigant may be entitled to "great leeway" when a court construes

9    its pleadings, "those pleadings nonetheless must meet some minimum threshold in providing a

10   defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66

11   F.3d 193, 199 (9th Cir. 1995). Therefore, because the complaint is completely silent with

12   respect to payment for training courses, the Court grants Defendant's motion for summary

13   judgment on that claim.

14        As to Plaintiff's allegation that Defendant breached the settlement agreement when the

15   San Francisco District Office requested and received authorization to fill three mediator

16   positions without giving Plaintiff priority consideration, the Court grants summary judgment in

17   favor of Defendant. Plaintiff points to no evidence that she applied for any of these positions,[3]

18   and the plain meaning of the settlement agreement requires that Plaintiff request or petition for

19   the position through an "application." *See Black's Law Dictionary* (9th ed. 2009) (defining

20   "application" as "[a] request or petition."). Unlike the position filled by the hardship transfer,

21   which was not publicly announced and which gave Plaintiff no notice to apply, there is no

22   allegation that Plaintiff was unaware of the three San Francisco mediator positions and unable

23

24

25        [3] At best, Plaintiff says she informed the San Francisco coordinator of her "interest" in
     mediating and asked when the mediator positions "would be replenished." (Johnson Decl. ¶ 7
     (Dkt. No. 28-1 at 2).) But Plaintiff does not say that she applied for the three available

26   positions once they became available.

ORDER, C09-1867-JCC
PAGE - 7

1 | to apply. Accordingly, the Court grants Defendant's motion for summary judgment on that

2 | claim as well.

3 | III.    CONCLUSION

4 |      For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART

5 | Defendant's motion for summary judgment (Dkt. No. 22). The Court also GRANTS

6 | Defendant's motion to extend the mediation deadline (Dkt. No. 34). The parties shall complete

7 | mediation no later than thirty days after the filing of this order.

8 |      DATED this 19th day of November, 2010.

9

10

11

12 | John C. Coughenour
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER, C09-1867-JCC
PAGE - 8